# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 4, 2020

Lyle W. Cayce
Clerk

No. 20-60178

Manuel F. Nkoumou Ondo,

*Petitioner*,

*versus*

William P. Barr, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A201 426 809

Before Willett, Ho, and Duncan, *Circuit Judges*.

Per Curiam:[*]

Manuel F. Nkoumou Ondo, a native and citizen of the Republic of Cameroon, petitions for review of the decision of the Board of Immigration Appeals ("BIA"), which adopted and affirmed the decision of the Immigration Judge ("IJ") to deny his application for asylum and withholding of removal. Because Ondo failed to exhaust his administrative remedies with

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60178

respect to one of his claims, we lack jurisdiction to consider it. With respect to his remaining claim, we deny his petition for review as meritless.

## I.

Ondo was a "gendarme"[1] in the Cameroonian military and asserts that others in his unit committed human rights abuses. He testified that on one occasion, a military general asked him how many soldiers were stationed with him. Answering honestly, he provided a number much lower than that reported by his lieutenant, who had apparently inflated the number to receive increased food rations. According to Ondo, the lieutenant retaliated against him by assigning him longer guard duty shifts. He also testified that the same lieutenant gave orders for Ondo's cousin to be killed after an unrelated altercation. After that, Ondo stated, the lieutenant approached him and said, "One is gone and the other will follow soon." Ondo interpreted this as a threat that he would meet the same fate as his cousin.

An IJ denied Ondo's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Ondo appealed to the BIA, raising only his claim for asylum and withholding of removal. He contended the IJ had erred in denying his application because "[b]y practically any definition offered, Respondent has established persecution on account of hi[s] being a gendarme officer who was threatened for disclosing the corruption of Lieutenant Wonso." Ondo's argument before the BIA was essentially that the IJ's opinion was "internally inconsistent" because it had found Ondo's testimony credible but, despite a "mountain of evidence," had disagreed that he was entitled to relief.

---

[1] In Cameroon, a gendarme is a member of the military police force. Ondo testified that the gendarmes were sent to maintain order in areas of unrest.

No. 20-60178

The BIA adopted and affirmed the IJ's decision. First, it noted that on appeal, Ondo did not challenge the denial of his claim under the CAT. It then explained that he had failed to show either past persecution or a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b); *Gjetani v. Barr*, 968 F.3d 393, 396 (5th Cir. 2020) ("To establish eligibility for asylum, Gjetani was required to demonstrate either past persecution or a well-founded fear of future persecution."). His experiences did not rise to the "extreme" level required to be considered persecution. Moreover, Ondo had not demonstrated that a protected ground had been or will be "one central reason" for any mistreatment, past or future.[2]

Mr. Ondo now petitions for our review of the BIA's decision. He contends that the BIA erred by combining its analyses of past persecution and fear of future persecution. He also maintains that he belongs to a particular social group of "whistleblowers within the Gendarme force that have exposed corruption and protested human rights abuses," and who thus face "persecution." In addition, he raises for the first time the argument that he fears persecution based on imputed political opinion. He asserts that after calling attention to the lieutenant's corrupt behavior, he was labeled as having an "anti-government or separatist political opinion." He also cites his testimony that the military sent him a message accusing him of training rebels and threatening to execute him on return. Further, Ondo explains that he testified to humanitarian organizations about human rights abuses by gendarmes, arguing that this "shows that [he] engaged in activities that could be perceived as expressions of anti-corruption beliefs."

---

[2] The Immigration and Nationality Act places the burden of proof on the applicant to show that she is a refugee, that is, to "establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i).

No. 20-60178

In response, the Government moves to dismiss the petition for lack of jurisdiction on the grounds that Ondo failed to exhaust administrative remedies. *See* 8 U.S.C. § 1252(d)(1) (requiring exhaustion of available administrative remedies). In its view, Ondo's arguments on appeal are different from those argued before the BIA, and are therefore unexhausted. In the alternative, the Government moves for summary denial. Summary disposition "is appropriate if 'the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case.'" *United States v. Arambula*, 950 F.3d 909, 909 (5th Cir. 2020) (quoting *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162) (5th Cir. 1969)).

## II.

As a threshold matter, we must determine whether we have jurisdiction to review Ondo's petition. A court "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." § 1252(d). Because our jurisdiction is limited by statute, the failure to exhaust administrative remedies "serves as a jurisdictional bar to our consideration of the issue." *Wang v. Ashcroft*, 260 F.3d 448, 452 (5th Cir. 2001). The exhaustion requirement applies when a petitioner could have raised the issue before the BIA, and the issue was one the BIA "has adequate mechanisms to address and remedy." *Omari v. Holder*, 562 F.3d 314, 318–19 (5th Cir. 2009). While a petitioner must take "some affirmative action" to present an issue to the BIA, the arguments before the BIA and on appeal need not be identical. *Vazquez v. Sessions*, 885 F.3d 862, 868 (5th Cir. 2018). The exhaustion requirement does not bar "subsequent variations in analysis or changes in the scope of an argument" but rather ensures that the petitioner has "presented an issue in some concrete way in order to put the BIA on notice of his claim." *Id.*

No. 20-60178

Ondo's failure to exhaust administrative remedies precludes our review of his claim that he fears future persecution based on imputed political opinion. Before the BIA, he maintained that he belonged to a particular social group of whistleblowers in the gendarmes who exposed corruption. He did not contend that he would be in danger due to a perception that he held an anti-government or separatist political opinion. Because Ondo neglected to properly raise this argument before the BIA, we cannot consider it on appeal. *See* § 1252(d). Therefore, we dismiss for lack of jurisdiction Ondo's claim based on imputed political opinion.

## III.

Ondo also contends the BIA erred by considering and rejecting his claim of past persecution and well-founded fear of future persecution as a package, rather than evaluating each separately. The Government answers that 8 U.S.C. § 1252(d) bars review of this claim as well because Ondo did not raise the claim in a motion to reconsider. "A motion for reconsideration is 'not generally required' to challenge an error in the BIA's opinion." *Dale v. Holder*, 610 F.3d 294, 298 (5th Cir. 2010) (quoting *Omari*, 562 F.3d at 320). "But where the BIA's decision itself results in a new issue and the BIA has an available and adequate means for addressing that issue, a party must first bring it to the BIA's attention through a motion for reconsideration." *Omari*, 562 F.3d at 320. For instance, when a petitioner alleged on appeal that the BIA impermissibly engaged in factfinding, we determined that this was a new issue that "must first be brought to the BIA in a motion for reconsideration." *Id.* By contrast, a petitioner need not file a motion for consideration when he asserts that the BIA erred "in regard to the same ground for relief already presented to the BIA." *Dale*, 610 F.3d at 299.

We agree with Ondo that § 1252(d) does not preclude our consideration of this claim, which is part and parcel of his claim based on

purported membership in a particular social group. This claim is not a "new issue" that was never presented before the BIA, as in *Omari*. It is closer to *Dale*, where the petitioner on appeal "dispute[d] only the BIA's answer to the issue he previously raised before it." *Id.* at 300. Like the petitioner in *Dale*, Ondo's "ground for relief . . . ha[s] remained logically consistent throughout." *Id.* He sufficiently presented this claim to the BIA, exhausting his administrative remedies.

Nonetheless, we agree with the Government that summary disposition is appropriate. Ondo has waived a crucial component of his claim by failing to challenge the BIA's conclusion that he had not established membership in a particular social group. A petitioner who declines to challenge the BIA's conclusion regarding his claim abandons that claim on appeal. *Sharma v. Holder*, 729 F.3d 407, 411 n.1 (5th Cir. 2013) (explaining that a petitioner "abandoned his claim for humanitarian asylum by failing to raise any challenge to the BIA's conclusion that he is not entitled to humanitarian asylum"). Because he does not contest the BIA's contrary conclusion, Ondo has abandoned his argument that he belongs to a particular social group.

The IJ stated that the group Ondo described might meet the definition of a particular social group but determined that Ondo had not shown he was a part of such a group. The IJ noted that a whistleblower is someone "who seeks to uncover or bring light to corruptive activity," but Ondo was not aware of the corruption when he acted. Instead, "the general . . . asked him a question and he gave an honest answer." The BIA explained it was thus "not clear on this record that [Ondo] is a whistle blower who 'exposed corruption' based on a single conversation with a general, or 'protested' human rights abuses by refusing to participate in military missions." Rather than challenging those adverse determinations, Ondo mischaracterizes the opinions, contending that "[t]he IJ recognized that this was a cognizable

particular social group, and the BIA adopted and affirmed the IJ's decision." By refusing to acknowledge the BIA's holding, Ondo has abandoned any argument that it was erroneous.

Because Ondo cannot demonstrate that a protected ground was "one central reason" for past or future persecution, he cannot show that he is entitled to relief. *See Gonzales-Veliz v. Barr*, 938 F.3d 219, 224 (5th Cir. 2019) ("For both asylum and withholding-of-removal claims . . . an alien must show that a protected ground (*e.g.*, membership in a particular social group) was 'at least one central reason for persecuting the applicant.'") (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). Accordingly, we will summarily deny his petition on that claim.

## IV.

In sum, we DISMISS for lack of jurisdiction Ondo's claim that he is entitled to relief because he faces persecution on the basis of imputed political opinion. We otherwise DENY the petition for review. All other pending motions are DENIED AS MOOT.